IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | |
|---|---|
| In re: ) | |
| ) | |
| First National Bancshares, Inc., ) | |
| ) | |
| Debtor, ) | |
| _____ ) | |
| ) | |
| John K. Fort, ) | |
| Chapter 7 Trustee for ) | |
| First National Bancshares, Inc., ) | |
| ) | C/A No. 7:12-3441-TMC |
| Plaintiff, ) | |
| ) | **OPINION AND ORDER** |
| v. ) | |
| ) | |
| Federal Deposit Insurance ) | |
| Company, in its capacity as ) | |
| Receiver of First National Bank ) | |
| of the South, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the court on Defendant Federal Deposit Insurance Company's ("FDIC's") Motion to Withdraw the Reference to the Bankruptcy Court. (ECF No. 1). Plaintiff John K. Fort, Trustee of the Estate of Debtor First National Bancshares, Inc., (the "Trustee") opposes the motion. (ECF No. 6-6). After reviewing the motion and arguments of the parties, the court denies the motion for the reasons discussed below.

**I. Background/Facts**

First National Bancshares, Inc. (the "Debtor") is the former holding company for First National Bank of the South (the "Bank"), a wholly-owned subsidiary of the Debtor. In August 2007, the Debtor and Carolina National Corporation ("CNC"), the holding company for Carolina

National Bank and Trust Company ("Carolina National"), entered into a merger agreement, which resulted in Carolina National becoming a wholly owned subsidiary of the Debtor.

In 2009, prior to the Bank's closing, the Debtor and the Bank filed consolidated federal tax returns pursuant to 26 U.S.C. § 1501, which resulted in a tax refund of $2,921,789 for losses sustained in 2008. The Debtor also received a refund of over $1 million for carrybacks attributable to CNC. These carrybacks were downstreamed to the Bank through three transactions on March 31, 2010 (the "Downstream Transfers"). In 2010, the Debtor again filed consolidated tax returns resulting in a refund of $3,315,394, for losses from tax years 2004-07 (the "Tax Refund").[1]

On April 27, 2009, the Bank and the Office of the Comptroller of the Currency ("OCC") entered into a consent order pursuant to which the Bank was required to maintain specific capital ratios and submit an acceptable capital plan. On July 16, 2010, the OCC closed the Bank and appointed the FDIC as receiver for the Bank.

On December 31, 2010, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On June 21, 2011, the FDIC filed a Proof of Claim in the Debtor's bankruptcy for the Tax Refunds in an amount not less than $3,315,394. The FDIC contends that the Tax Refunds are property of the FDIC because they arise from prior taxes paid and losses incurred by the Bank. The FDIC states it is preserving rights to a claim in the bankruptcy case if a court were to hold that the Tax Refunds are properly part of the Debtor's estate.

On September 10, 2012, the Trustee filed an adversary proceeding seeking to disallow the Proof of Claim, pursuant to 11 U.S.C. §§ 502(b) and (d); subordinate the FDIC's claims to

---

[1]Pending a resolution of the dispute over ownership, these tax refunds are currently being held in a segregated account pursuant to a consent order filed by the bankruptcy court on June 3, 2011. (ECF No. 3-1).

the general unsecured claims against the Debtor's bankruptcy estate; a declaratory judgment that the Tax Refunds are an asset of the bankruptcy estate ("Declaratory Judgment Claim"); and monetary relief for the three allegedly fraudulent transfers amounting to approximately $4,028,996.01, made on or about March 31, 2010 (the "Fraudulent Transfer Claim").

The FDIC filed a motion to withdraw the reference of the adversary proceeding to the bankruptcy court. (ECF No. 1). The FDIC contends that withdrawal of the reference is necessary because resolution of the claims will require consideration of federal laws other than Title 11, the Bankruptcy Code, and is, at least in part, within the exclusive jurisdiction of the district court. Additionally, the FDIC contends that cause exists to permissively withdraw the reference. The Trustee filed a response opposing the withdrawal of the reference. (ECF No. 6-6). The Trustee argues that neither mandatory nor permissive withdrawal is warranted under the circumstances of this case. [2]

## II. Discussion

A bankruptcy court derives its jurisdiction from the district court, which has "original and exclusive jurisdiction of all cases under title 11," and "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(a), (b); 28 U.S.C. § 157(a). "Bankruptcy judges may hear and determine . . . all core proceedings arising under title 11, or arising in a case under title 11. . . ." 28 U.S.C. § 157(b)(2). Section 157(a) allows district courts to refer bankruptcy cases to the bankruptcy court. 28 U.S.C. § 157(a). This district has referred all bankruptcy cases to the bankruptcy court.

Section 157(d), however, provides:

---

[2] Additionally, the Trustee argued that the motion is untimely. However, at the hearing, the Trustee specifically withdrew its argument that the FDIC's motion to withdraw is untimely.

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.

28 U.S.C. § 157(d). The first sentence of §157(d) provides for permissive withdrawal, while the second sentence addresses mandatory withdrawal.

The Fourth Circuit has not set forth specific factors to consider in deciding whether to grant a motion for mandatory withdrawal. Several district courts in the Fourth Circuit, however, have held that a motion for mandatory withdrawal should be granted if: 1) the movant made a timely motion for withdrawal; 2) the bankruptcy court would be called upon to apply non-bankruptcy federal law, and 3) the application of non-bankruptcy federal law is essential (i.e., substantial and material) to the bankruptcy proceeding. *Vieira v. AGM, II, LLC*, 366 B.R. 532 (D.S.C. 2007) (following *In re U.S. Airways Group, Inc.*, 296 B.R. 673 (E.D.Va. 2003)).

FDIC moves for mandatory withdrawal on the ground that the bankruptcy court will have to apply non-bankruptcy law which is substantial and material. Specifically, FDIC contends that, in order to resolve the issues in this case, the court will have to apply the jurisdictional bar set forth in the Financial Institution Reform, Recovery and Enforcement Act ("FIRREA"), 12 U.S.C. §1821(d)(13)(D), and other non-bankruptcy federal law set forth in Title 12, specifically 12 U.S.C. §§ 1821(d)(9) and (e)(1), and 12 U.S.C. §1823 (3).[3]

---

[3] FDIC also contends that 12 U.S.C. § 1821 (u) would need to be considered in evaluating the Fraudulent Transfer Claim. At the hearing, the Trustee specifically agreed that this cause of action was one which could not go forward as it is currently pled. However, even if this claim were properly pled, the court finds the application of § 1821 (u) would also not warrant mandatory withdrawal. *See In re Sahni,* 227 B.R. 748, 751 (D.Kan.1998) (concluding that application of the fraudulent conveyance provision of Title 12 or FIRREA does not require withdrawal).

4

FIRREA "was enacted during the savings and loan insolvency crisis to enable the FDIC and the Resolution Trust Company (RTC) to efficiently and expeditiously wind up the affairs of hundreds of failed financial institutions." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005) (*citing Freeman v. FDIC,* 56 F.3d 1394, 1398 (D.C.Cir. 1995)). It "grants the FDIC, as receiver, broad powers to determine claims asserted against failed banks." *Henderson v. Bank of New England*, 986 F.2d 319, 320 (9th Cir. 1993) (citing 12 U.S.C. § 1821(d)(3)(A)).

To effectuate these broad powers, FIRREA "establishes an administrative process for handling claims made against the assets of a failed bank that has been placed under receivership." *In re Lewis,* 398 F.3d at 739. The claims-handling procedure is set out in 12 U.S.C. § 1821(d)(3)-(13). The FDIC must give notice to creditors to file claims by a specified date. 12 U.S.C. § 1821(d)(3)(B). After a claim is filed, the FDIC has 180 days to allow or disallow the claim. 12 U.S.C. § 1821(d)(5)(A). If the claim is disallowed or has not been ruled on after 180 days, then the claimant may seek administrative review or file and action in the district court within 60 days. 12 U.S.C. § 1821(d)(6)(A). If the claimant fails to seek administrative or judicial review, then the "claimant shall have no further rights or remedies with respect to such claim." 12 U.S.C. § 1821(d)(6)(B).

Section 1821(d)(13)(D) of FIRREA sets forth a jurisdictional bar over certain claims by providing for judicial review only after an administrative claims process as follows:

(D) Limitation on judicial review

Except as otherwise provided in this subsection, **no court** shall have jurisdiction over –

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the

> Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D)(emphasis added).

In *In re BankUnited Financial Corp.*, 727 F.3d 1100 (11th Cir. 2013), the court, addressing the jurisdictional bar of § 1821(d)(13)(D), held:

> The FDIC contends that 12 U.S.C. § 1821(d)(13)(D) precluded the Bankruptcy Court from deciding the issue because, in its view, the tax refunds constitute an asset of the FDIC receivership. *See* 12 U.S.C. § 1821(d)(13)(D) ("Except as otherwise provided, no court shall have jurisdiction over . . . any action seeking a determination of rights with respect to[ ] the assets of [the FDIC receivership]."). According to the FDIC, 12 U.S.C. § 1821(d)(6) provides the only avenue for judicial review of a claim against an asset of the FDIC receivership—and that provision grants federal jurisdiction only to the district court, not the bankruptcy court. *See* 12 U.S.C. § 1821(d)(6) ("The claimant may . . . file suit on [a claim against the FDIC receivership] in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim).").
>
> The FDIC's argument is unpersuasive. Section 1821(d)(13)(D) applies only to assets of the FDIC's receivership. It therefore does not preclude the Bankruptcy Court from determining the threshold question of whether the tax refunds are an asset of the bankruptcy estate. . . .

727 F.3d 1100, 1104 n.5. The court agrees with this reasoning. The first question to be answered is whether the tax refunds are an asset of the bankruptcy estate. And determining what is an asset of a bankruptcy estate is a core proceeding for the bankruptcy court.

Section 157(b)(2) sets forth a non-exclusive list of sixteen types of core proceedings.[4]

---

[4] Section 157(b)(2) provides:

Ordinarily, the determination whether a matter is a core proceeding is made by the bankruptcy

---

> Core proceedings include, but are not limited to -
>
> (A) matters concerning the administration of the estate;
>
> (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
>
> (C) counterclaims by the estate against persons filing claims against the estate;
>
> (D) orders in respect to obtaining credit;
>
> (E) orders to turn over property of the estate;
>
> (F) proceedings to determine, avoid, or recover preferences;
>
> (G) motions to terminate, annul, or modify the automatic stay;
>
> (H) proceedings to determine, avoid, or recover fraudulent conveyances;
>
> (I) determinations as to the dischargeability of particular debts;
>
> (J) objections to discharges;
>
> (K) determinations of the validity, extent, or priority of liens;
>
> (L) confirmations of plans;
>
> (M) orders approving the use or lease of property, including the use of cash collateral;
>
> (N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;
>
> (O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
>
> (P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

28 U.S.C. § 157 (b)(2).

court. 28 U.S.C. § 157(b)(3) (providing that the "bankruptcy judge shall determine, on the judge's own motion or on timely motion of a party, whether a proceeding is a core proceeding under this subsection"). However, a district court may conduct the inquiry when considering whether to withdraw the reference. *In re U.S. Airways*, 296 B.R. at 681-83 (assessing core or non-core status under discretionary withdrawal). Section 157(b)(2)(A) provides that core proceedings are "matters concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). The determination whether something is property of the estate is a core matter. *See Velo Holdings, Inc. v. Paymentech, LLC (In re Velo Holdings, Inc.)*, 475 B.R. 367, 387–88 (Bankr. S.D.N.Y. 2012) (collecting cases and noting that determination of what is property of the bankruptcy estate "is an essential part of administration of the bankruptcy estate and stems from the bankruptcy itself" and holding that it had the constitutional authority to enter final orders and judgment in the proceeding).

Furthermore, several courts have determined that the application of FIRREA or Title 12 does not require material and substantial consideration of non-bankruptcy law so as to require mandatory withdrawal. *See, e.g., In re Perdue,* 2010 WL 907951, *4 (N.D. Ohio March 11, 2010) (refusing to withdraw reference in matter involving application of Title 12); *In re Sahni*, 227 B.R. 748, 751 (D.Kan.1998) (concluding that application of the fraudulent conveyance provision of Title 12 or FIRREA does not require withdrawal); *Resolution Trust Corp. v. Overland Park Fin. Corp.*, 182 B.R. 865, 870 (D.Kan.1995) ("[The bankruptcy] court is indeed an appropriate forum in which to determine the competing rights of parties in a tax refund resulting from a consolidated return."). The FDIC has failed to show that this action requires significant interpretation of any non-bankruptcy law. And, in any event, the bankruptcy court is perfectly capable of applying Title 12 in the instant action as these issues are routinely

8

adjudicated by bankruptcy courts. Accordingly, the court is not convinced mandatory withdrawal is warranted. Nor is permissive withdrawal appropriate.

Like mandatory withdrawal motions, the Fourth Circuit has not set forth specific factors to consider in deciding whether permissive withdrawal should be granted. However, when ruling on such a motion, district courts have considered the following factors in determining whether cause exists for permissive withdrawal: (1) whether the proceeding is core or non-core; (2) the uniform administration of bankruptcy proceedings; (3) expediting the bankruptcy process and promoting judicial economy; (4) the efficient use of the resources of the debtors and creditors; (5) reduction of forum shopping; and (6) the preservation of the right to a trial by jury. *Vieira*, 366 B.R. 532, 537-38 (quoting *In re U.S. Airways,* 296 B.R. at 681).

First, as discussed above, the court finds that the claims at issue here are core proceedings. "Some courts view the core/non-core factor as a threshold question that must be answered before analysis may proceed and is determinative of most of the other factors, while other courts simply place substantial weight on the core/non-core factor." *In re U.S. Airways*, 296 B.R. at 681–82. The fact that the proceeding at issue is a core proceeding weighs against withdrawal of the reference. *Dwyer v. First Nat'l Bank (In re O'Brien)*, 414 B.R. 92, 98 (S.D. W.Va. 2009) (holding a finding that the claims are core "strongly militates against withdrawal of the reference."). The remaining factors also weigh against withdrawal or are neutral. Uniformity of administration will be fostered by an initial determination by the bankruptcy court because the facts and issues to be determined are common with the bankruptcy proof of claim proceedings and the bankruptcy court is familiar with fraudulent transfer proceedings in general. *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1102 (2d Cir.1993) (noting that "hearing core matters in a district court could be an inefficient allocation of judicial resources given that the bankruptcy

court generally will be more familiar with the facts and issues"). Further, the bankruptcy court is in the best position to consider these issues together. The forum selection factor is neutral here, and a right to a jury trial does not mandate withdrawal, so this factor weighs against withdrawing the reference.[5] In short, none of the FDIC's arguments for permissive withdrawal are persuasive.

### III. Conclusion

For the foregoing reasons, Defendant's Motion to Withdraw Reference to the Bankruptcy Court (ECF No. 1) is **DENIED**. The Clerk is directed to close this case.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

Greenville, South Carolina
January 10, 2014

---

[5] Even a right to a jury trial does not require immediate withdrawal. *See In re Stansbury Poplar Place, Inc.*, 13 F.3d 122, 128 (4th Cir. 1993) ("Our holding that bankruptcy judges are not authorized to conduct jury trials does not mean that the bankruptcy court immediately loses jurisdiction of the entire matter or that the district court cannot delegate to the bankruptcy court the responsibility for supervising discovery, conducting pre-trial conferences, and other matters short of jury selection and trial.").